1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
9               AT TACOMA

10   BERNADETTE M. FLOWERS,

11              Plaintiff,                    CASE NO. 3:16-cv-05025 JRC

12        v.                                  ORDER ON PLAINTIFF'S
                                              COMPLAINT
13   CAROLYN W. COLVIN, Acting
14   Commissioner of the Social Security
     Administration,

15              Defendant.

16

17        This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

20   Magistrate Judge, Dkt. 8). This matter has been fully briefed (*see* Dkts. 18, 19, 22).

21        After considering and reviewing the record, the Court concludes that the ALJ

22   erred when she discounted the medical opinion of Dr. Brett Trowbridge. The ALJ

23
     committed legal error when she rejected Dr. Trowbridge's opinion because it contained
24

1  opined limitations on a "check box" DSHS form. Furthermore, the ALJ failed to provide

2  specific and legitimate reasons supported by substantial evidence for giving little weight

3  to Dr. Trowbridge's opinion. Contrary to the ALJ's determination, the record

4  demonstrates that Dr. Trowbridge's opinion on the checked boxes was supported by his

5  clinical findings, interview, testing, mental status examination, and his narrative report.

6  Had the ALJ properly considered Dr. Trowbridge's opinion, the residual functional

7  capacity may have included additional limitations.

8
9       Because this error is not harmless, this matter is reversed pursuant to sentence four

10  of 42 U.S.C. § 405(g) and remanded to the Acting Commissioner for further

11  consideration consistent with this order.

12                              BACKGROUND

13       Plaintiff, BERNADETTE M. FLOWERS, was born in 1968 and was 43 years old

14  on the alleged date of disability onset of June 1, 2012 (*see* AR. 251-57, 258-64). Plaintiff

15  believes she finished her sophomore year of high school and has had no further education

16  (AR. 62). Plaintiff has work experience in customer service, retail department manager,

17  restaurant manager, food server and bartending (AR. 298-309). She last worked for an

18  online jewelry business but was laid off "due to personal problems" (AR. 63).

19       According to the ALJ, plaintiff has at least the severe impairments of "major

20  depressive disorder, post-traumatic stress disorder (PTSD), degenerative disc disease of

21  the lumbar spine; degenerative disc disease of the cervical spine, degenerative joint

22  disease of the right shoulder (20 CFR 404.1520(c) and 416/920(c))" (AR. 24).

23

24

1   At the time of the hearing, plaintiff was single, living with a friend and the friend's

2   son (AR. 60-61).

3   PROCEDURAL HISTORY

4   Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42

5   U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42

6   U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and

7   following reconsideration (*see* AR. 148-54, 155-62, 165-69, 170-77). Plaintiff's

8   requested hearing was held before Administrative Law Judge Cynthia Rosa ("the ALJ")

9   on February 5, 2014 (*see* AR. 54-85). On May 6, 2016, the ALJ issued a written decision

10   in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security

11   Act (*see* AR. 19-53).

12   

13   In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or

14   not the ALJ provided sufficient reasons to reject Dr. Trowbridge's opinion; (2) Whether

15   or not the ALJ provided sufficient reasons to reject Dr. Thompson's opinion; (3) Whether

16   or not the ALJ provided sufficient reasons to reject Dr. Lewis' opinion; (4) Whether or

17   not the ALJ provided sufficient reasons to reject plaintiff's subjective claims; and

18   (5) Whether or not given these errors, the RFC and hypothetical questions were complete

19   so as to support the step five findings (*see* Dkt. 18, p. 1).

20   STANDARD OF REVIEW

21   

22   Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

23   denial of social security benefits if the ALJ's findings are based on legal error or not

24   supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1   1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

2   1999)).

3                                          DISCUSSION

4      **(1)      Whether the ALJ properly evaluated the medical opinion evidence.**

5           Plaintiff argues the ALJ erred in her treatment of the medical evidence of Drs.

6   Brett C. Trowbridge, Ph.D., Loreli Thompson, Ph.D., and Janis Lewis, Ph.D. (Dkt. 18,

7   pp. 9-12).

8           The ALJ must provide "clear and convincing" reasons for rejecting the

9   uncontradicted opinion of either a treating or examining physician or psychologist.

10  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d

11  418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when

12  a treating or examining physician's opinion is contradicted, that opinion can be rejected

13  "for specific and legitimate reasons that are supported by substantial evidence in the

14  record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th

15  Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can

16  accomplish this by "setting out a detailed and thorough summary of the facts and

17  conflicting clinical evidence, stating his interpretation thereof, and making findings."

18  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881

19  F.2d 747, 751 (9th Cir. 1989)). The ALJ may not reject a brief, conclusory opinion from

20  a treating physician if the opinion is consistent with the claimant's testimony and with the

21  doctor's treatment notes. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

22

23

24

1          *(a) Brett Trowbridge, Ph.D., J.D.*

2          Dr. Trowbridge examined plaintiff for a DSHS Psychological/Psychiatric

3    evaluation on October 4, 2012 (AR. 376-91). Dr. Trowbridge reviewed records, charted

4    plaintiff's history, and conducted a mental status examination and other testing (*see id.*).

5    On mental status examination, Dr. Trowbridge observed that plaintiff's speech was

6    anxious and rapid, her mood was depressed, and her affect was flat (AR. 379). Dr.

7    Trowbridge also observed that plaintiff was well groomed and cooperative, and she was

8    within normal limits on thought process and content, orientation, perception, memory,

9    fund of knowledge abstract thought, and insight and judgment (*see id.*). Plaintiff failed at

10   serial 7s and could not perform simple subtraction problems (AR. 380-81). Dr.

11   Trowbridge opined that she had obvious concentration issues, and after conducting a Rey

12   Fifteen Item Test, found that she was not malingering (AR. 377, 379, 386).

13

14         Based upon his examination, Dr. Trowbridge checked boxes on a form opining

15   that plaintiff has marked limitations in several areas, including in her ability to:

16   (1) "Perform activities with a schedule, maintain regular attendance, and be punctual

17   within customary tolerances without special supervision"; (2) "Perform routine tasks

18   without special supervision"; (3) "Be aware of normal hazards and take appropriate

19   precautions"; (4) "Communicate and perform effectively in a work setting";

20   (5) "Complete a normal work day and work week without interruptions from

21   psychologically based symptoms"; and (6) "Set realistic goals and plan independently"

22   (AR. 378). He also checked boxes on a form opining that plaintiff has a number of

23

24   moderate limitations, including in her ability to: (1) "Understand, remember, and persist

1  in tasks by following very short and simple instructions"; (2) "Understand, remember,

2  and persist in tasks by following detailed instructions"; (3) "Learn new tasks"; (4) "Adapt

3  to changes in a routine work setting"; (5) "Ask simple questions or request assistance";

4  and (6) "Maintain appropriate behavior in a work setting" (*id.*). Based on his clinical

5  findings, Dr. Trowbridge observed that plaintiff suffers from (1) depression, which

6  "causes low energy level and lack of motivation, daily, marked"; (2) anxiety, which Dr.

7  Trowbridge observed causes plaintiff to feel "uncomfortable leaving her home, startled

8  by loud sounds, [and] causes problems with work persistence, marked daily"; and (3) a

9  history of molestation and her boss having been murdered, which also causes problems

10  with work persistence (AR. 377).

11

12         With respect to Dr. Trowbridge's medical opinion, the ALJ gave little weight to

13  Dr. Trowbridge's opinion as to the "checked boxes" indicating plaintiff's "marked" and

14  "moderate" limitations, finding in relevant part:

15         He checked the boxes indicating moderate to marked limitations in the 13
           domains addressed on the form. He did not explain the ratings aside from
16         noting that the claimant scored 28 out of 30 on the mini-mental status
           examination and discussing her performance on mental status examination.
17         The undersigned has considered the 'marked' and 'moderate' limitations
           indicated by Dr. Trowbridge but gives them little weight in assessing the
18         claimant's longitudinal functioning. Terms such as 'moderate' have little
           value in the function-by-function analysis required in assessing a claimant's
19         maximum residual functional capacity. The definitions provided on the
           DSHS do not provide much clarification, explaining only that a 'moderate'
20         rating meant there were 'significant limits' on the claimant's ability to
           perform the activity, and a 'marked' rating meant a 'very significant
21         limitation.' These terms do not explain how often or to what extent a
           claimant is able to perform the activity, despite the limitations, as is
22         required in the maximum residual functional capacity analysis. For this
           reason, these terms are of little probative value in the analysis herein.
23

24

1  (AR. 40-41) (citations omitted). The ALJ relied upon a portion of Dr. Trowbridge's

2  opinion, finding:

3
> Instead, the undersigned relies on the doctor's clinical findings, namely that
4
> the claimant's mood was depressed and her affect flat, and she exhibited
> 'obvious concentration issues.' Given these issues, the undersigned finds it
5
> reasonable to limit the claimant to simple routine tasks and to limit her
> contact with the public and co-workers. No greater limitations are
6
> warranted by the clinical findings, however, as the claimant's thought
> processes, thought content, orientation, perception, memory, fund of
7
> knowledge, abstract thought, insight, and judgment were all within normal
> limits.
8
(*Id.*) (citations omitted). In addition, the ALJ determined that Dr. Trowbridge's
9
evaluation was further undermined because plaintiff "admitted that she was not receiving
10
any mental health treatment or taking any psychotropic medication at the time of the
11
evaluation" (AR. 42). The ALJ determined that plaintiff is at maximum capacity "when
12
fully medicated and compliant with her recommended treatment" and for this reason the
13
ALJ gave "Dr. Trowbridge's GAF score and check-the-box assessment little weight"
14
(AR. 42). Plaintiff argues the reasons offered by the ALJ for rejecting Dr. Trowbridge's
15
opinion are not supported by substantial evidence and free of legal error. The undersigned
16
agrees.
17
First, the ALJ rejected Dr. Trowbridge's opinions contained on the "check box"
18
form because she determined that the terms "marked" and "moderate" have little
19
probative value and gave his "check-the-box assessment little weight" (*see* AR. 41-42).
20
As an initial matter, discrediting a doctor's opinion simply because he used a check box
21
form is not valid unless that opinion is inconsistent with the underlying clinical records.
22
*See Garrison*, 759 F.3d at 1014 n.17 ("the ALJ was [not] entitled to reject [medical]
23

24

1   opinions on the ground that they were reflected in mere check-box forms" where the

2   "check-box forms did not stand alone" but instead "reflected and were entirely consistent

3   with the hundreds of pages of treatment notes"); *see also Neff v. Colvin*, 639 F. App'x

4   459 (9th Cir. 2016) (unpublished); *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir.

5   2015) (unpublished). Thus, to the extent that the ALJ discounted Dr. Trowbridge's

6   opinion simply because the opinion was contained on a check box form, the ALJ

7   committed legal error.

8        Second, the ALJ rejected Dr. Trowbridge's opinion because she determined that

9   the definitions for "marked" and "moderate" were of little probative value in the

10  disability determination (*see* AR. 41-42). However, an ALJ may not disregard a

11  physician's medical opinion simply because it was initially procured in the context of a

12  state form and contains definitions for the doctor's opinion. *See, e.g.*, *Desrosiers v. Sec'y*

13  *of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988); *Booth v. Barnhart,* 181 F.

14  Supp. 2d 1099, 1105-06 (C.D. Cal. 2002). Rather, "[t]he ALJ must 'translate' terms of art

15  contained in such medical opinions into the corresponding Social Security terminology in

16  order to accurately assess the implications of those opinions for the Social Security

17  disability determination." *Booth*, 181 F. Supp. 2d at 1106. The ALJ did not do so here. As

18  noted by plaintiff, the DSHS form clearly contained a definition for "marked" and

19  "moderate" limitations (*see* AR. 378 (marked "means a very significant limitation on the

20  ability to perform one or more basic work activity"; moderate "means there are

21  significant limits on the ability to perform one or more basic work activity")). Although

22  the ALJ determined that the terms "marked" and "moderate" have little probative value,

1    her determination was based on the definitions alone, not Dr. Trowbridge's opinion.

2    Indeed, the ALJ did not discuss Dr. Trowbridge's opined limitations regarding plaintiff's

3    marked and moderate impairments. As noted above, the Commissioner "may not reject

4    'significant probative evidence' without explanation." *Flores*, 49 F.3d at 570-71 (citation

5    omitted). The Court finds that a medical opinion regarding a claimant's functional

6    limitations constitutes significant, probative evidence, and the ALJ erred by failing to

7    discuss it. *See Marsh*, 792 F.3d at 1172-73.

8
     Moreover, although Dr. Trowbridge's opinions were partially contained in the
9
     form of a check box form, his opinion is also supported by an extensive clinical interview
10
     with testing, mental status examination, narrative opinion, and review of records (*see* AR.
11
     376-92), undermining the ALJ's determination that Dr. Trowbridge did not support his
12
     opinion. For example, the ALJ found that Dr. Trowbridge did not support his opinion
13
     regarding the checked boxes for the marked or moderate limitations other than indicating
14
     that the "claimant scored 28 out of 30 on the mini-mental status examination and
15
     discussing her performance on mental status examination" (*see* AR. 41). However, the
16
     record reflects that Dr. Trowbridge opined in his clinical findings that plaintiff's
17
     depression caused her to have low energy and lack motivation and her anxiety made her
18
     uncomfortable to leave her home and caused her problems with work persistence. These
19
     clinical findings, in narrative form, support Dr. Trowbridge's check box opinions that
20
     plaintiff has marked limitations in her ability to perform activities within a schedule,
21
     maintain regular attendance at work, complete a normal work day or week without
22
     interruptions, and perform routine tasks without supervision (*See* AR. 377-78). Thus, on
23

24

1  this additional basis, the ALJ erred in rejecting Dr. Trowbridge's opinions reflected on

2  checked boxes, which were supported by his examination notes and clinical findings. *See*

3  *Garrison*, 759 F.3d at 1014 n.17.

4      Third, the ALJ rejected Dr. Trowbridge's opinion in part because she determined

5  that plaintiff was not receiving mental health treatment or taking psychotropic medication

6  during her examination (*see* AR. 42). However, Dr. Trowbridge noted that plaintiff "does

7  not presently have enough money to pay for her medications" (AR. 376). "[A] disabled

8  claimant cannot be denied benefits for failing to obtain medical treatment that would

9  ameliorate his condition if he cannot afford that treatment." *Gamble v. Chater*, 68 F.3d

10  319, 321 (9th Cir. 1995); *see also Regennitter v. Comm'r SSA*, 166 F.3d 1294, 1296 (9th

11  Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained

12  failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,'

13  we have proscribed the rejection of a claimant's complaint for lack of treatment when the

14  record establishes that the claimant could not afford it") (citations, ellipses and brackets

15  omitted); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, in discounting Dr.

16  Trowbridge's opinion because plaintiff was not taking medication or engaged in mental

17  health treatment, the ALJ did not discuss the proffered reason for the lack of treatment,

18  that plaintiff could not afford the medication. Thus, the ALJ also erred in discounting Dr.

19  Trowbridge's opinion by failing to discuss evidence that plaintiff could not afford her

20  medication and for discounting his opinion on this basis.

21      The Court also concludes that the error in the evaluation of Dr. Trowbridge's

22

23  opinion is not harmless. The Ninth Circuit has "recognized that harmless error principles

24

1    apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th

2    Cir. 2011) (citing *Stout v. Comm'r*, *Social Security Admin.*, 454 F.3d 1050, 1054 (9th Cir.

3    2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout*

4    that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate

5    nondisability determination' and that 'a reviewing court cannot consider [an] error

6    harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting

7    the testimony, could have reached a different disability determination.'" *Marsh*, 792 F.3d

8    at 1173 (citing *Stout*, 454 F.3d at 1055-56). In *Marsh*, even though "the district court

9    gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and

10   remanded for further administrative proceedings, noting that "the decision on disability

11   rests with the ALJ and the Commissioner of the Social Security Administration in the

12   first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)). Here,

13   because the ALJ improperly disregarded the opinions of Dr. Trowbridge in forming the

14   RFC and plaintiff was found to be capable of performing other jobs existing in the

15   national economy based on that RFC, the error affected the ultimate disability

16   determination and is not harmless.

17              *(b) Loreli Thompson, Ph.D. and Janis Lewis, Ph.D.*

18        Plaintiff also contends the ALJ erred in her treatment of Drs. Thompson and Lewis

19   (Dkt. 18, pp. 8-12). Dr. Thompson conducted a psychological diagnostic evaluation of

20   plaintiff on March 29, 2013 and as part of her evaluation reviewed medical records,

21   including Dr. Trowbridge's examination and clinical findings (*see* AR. 421-27).

22   Similarly, Dr. Lewis conducted a psychological evaluation of claimant on December 20,

1  2013 and as part of her evaluation also reviewed medical records, including Dr.

2  Trowbridge's examination (*see* AR. 551). The Court has already concluded that the ALJ

3  erred by failing to evaluate the medical opinion of Dr. Trowbridge, *see supra*. Therefore,

4  because Drs. Thompson's and Lewis's opinions rely in part on a review of Dr.

5  Trowbridge's medical opinion, and based on the record as a whole, the ALJ should

6  reevaluate the medical opinions of Drs. Thompson and Lewis anew following remand of

7  this matter.

8
      **(2)     Whether or not the ALJ provided sufficient reasons to reject plaintiff's**
9              **subjective claims.**

10      The Court already has concluded that the ALJ erred in reviewing the medical

11  evidence and that this matter should be reversed and remanded for further consideration,

12  *see supra*, section 1. In addition, the evaluation of a claimant's statements regarding

13  limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. §

14  404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4. Therefore, plaintiff's testimony and

15  statements should be assessed anew following remand of this matter.

16
      **(3)     Whether or not given these errors, the RFC and hypothetical questions**
17              **were complete so as to support the step five findings.**

18      As discussed in section 1, *supra*, had the ALJ properly weighed the medical

19  evidence, the RFC and hypothetical questions posed to the vocational expert may have

20  included additional limitations related to plaintiff's impairments. On remand, the ALJ

21  shall re-evaluate the RFC to determine if additional limitations are warranted based upon

22  plaintiff's functional limitations. The ALJ shall also reevaluate Step Five findings, if

23  necessary, in light of the Commissioner's reevaluation of the medical evidence.

24

1 **(4)   Whether this matter should be reversed and remanded for an award of benefits or for further administrative proceedings.**

2

3   Plaintiff contends that this matter should be reversed and remanded with a

4   direction to award benefits (*see* Dkt. 18, p. 2).

5   The Court may remand this case "either for additional evidence and findings or to

6   award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when

7   the Social Security Administration does not determine a claimant's application properly,

8   "'the proper course, except in rare circumstances, is to remand to the agency for

9   additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

10   Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for

11   determining when [improperly rejected] evidence should be credited and an immediate

12   award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)

13   (quoting *Smolen*, 80 F.3d at 1292). An award of benefits is appropriate when:

14

15   (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

16

17

18   *Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292). Here, outstanding issues

19   must be resolved, including whether or not a vocational expert may still find that plaintiff

20   has the ability to perform other work if the improperly discredited evidence is credited in

21   full. *See Smolen*, 80 F.3d at 1292. Accordingly, remand for further consideration is

22   warranted in this matter.

23   //

24

1

CONCLUSION

2      Based on these reasons and the relevant record, the Court **ORDERS** that this

3   matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

4   405(g) to the Acting Commissioner for further consideration consistent with this order.

5      **JUDGMENT** should be for plaintiff and the case should be closed.

6      Dated this 3rd day of August, 2016.

7

8   _____

9   J. Richard Creatura
    United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 14